**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **FREDERICK MAURICE WESTBROOK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JOSEPH NORWOOD, et al.,**<br><br>**Defendants.** | **Case No. 23-CV-275-JFH-GLJ** |

**OPINION AND ORDER**

This civil rights action, brought pursuant to 42 U.S.C. § 1983, is before the Court on Defendants Joe Norwood, Kevin Brown, Jamie Lysinger, Serena Brewer and Shelia Devine's (collectively, "Defendants") Motion for Summary Judgment ("Motion"). Dkt. No. 38. Plaintiff Frederick Maurice Westbrook ("Westbrook") challenges the conditions of his confinement while incarcerated at Davis Correctional Facility and alleges, among other claims, that he received inadequate medical care while incarcerated at Davis Correctional Facility. *See* Dkt. No. 1. Defendants now move for summary judgment on all of Westbrook's claims arguing he failed to properly exhaust his administrative remedies and the evidence establishes Westbrook cannot prevail on his claims. *See* Dkt. No. 38. For the reasons discussed below, the Court grants the Motion.

## I. Undisputed Facts

The following facts are supported by the evidence in the record and are construed in the light most favorable to Westbrook:

From August 20, 2020, until September 7, 2023, Westbrook was incarcerated at the Davis Correctional Facility. Dkt. No. 38-2. While incarcerated at Davis Correctional Facility, Westbrook was seen by Serena Brewer, ARNP, in the facility's medical clinic, on nine (9) occasions between

January 5, 2022, and July 19, 2023. Dkt. No. 38-6. Westbrook also received examinations from off-site medical specialists on four (4) occasions between August 5, 2022, and August 16, 2023. *See id.* Westbrook received diagnostic testing on seven (7) occasions between November 13, 2022, and September 1, 2023. *See id.* During his time at Davis Correctional Facility, Westbrook was prescribed six (6) medicines. *See id.* During this same period, Westbrook submitted ten (10) requests for health services to the facility's medical staff, and each request was responded to by medical staff. *See id.* In all, Westbrook actively sought and received medical care from the medical staff at Davis Correctional Facility while housed there.

Nevertheless, Westbrook, as evidenced by the instant Complaint and his grievances, was not satisfied with the care he received and the conditions of his confinement. *See* Dkt. No. 1; *see also* Dkt. No. 38-8. The Oklahoma Department of Corrections ("ODOC") has promulgated an administrative remedies grievance policy and process for use by inmates like Westbrook, OP-090124. Dkt. No. 38-7. OP-090124 outlines the process for submission and review of formal grievances. Dkt. No. 38-7 at 11-20. First, an inmate must submit a formal grievance to the appropriate facility/ unit head; a medical grievance must be submitted to the facility correctional health services administrator. *Id.* at 11-13. The reviewing authority is tasked with answering "properly submitted grievances" within twenty (20) days of receipt. *Id.* at 14. If a grievance is not properly submitted, the inmate is afforded ten (10) days to correct any errors and properly resubmit the grievance. *Id.* If the inmate fails to correct the errors or properly resubmit, "the grievance will not be answered and the inmate/offender will have waived/forfeited the opportunity to proceed in the grievance process." *Id.*

The inmate/offender may appeal the facility-level reviewing authority's response to a submitted grievance to the Administrative Review Authority ("ARA"), Personal Identity ARA, or

Medical ARA, whichever is appropriate. Dkt. No. 38-7 at 15. OP-090124 instructs that if a grievance appeal is submitted improperly, "[t]he inmate/offender will be given one opportunity to correct any errors, which must be received by the ARA within 10 days of the time the inmate/offender is notified of improper submission." *Id.* at 16. "If the inmate/offender fails to correct the errors or properly resubmit, the grievance or grievance appeal will not be answered and the inmate/offender will have waived/forfeited the opportunity to proceed in the grievance process." *Id.* If an inmate properly submits his appeal to the ARA, the ARA can return the grievance to the reviewing authority for further investigation and an amended response. *Id.* at 17-18. The reviewing authority will then provide an amended response which the inmate may appeal to the ARA. *Id.* at 18. The ARA will then issue a final ruling which "will conclude the internal administrative process available." *Id.* Upon receipt of a final ruling from the ARA, "[t]he inmate/offender will have satisfied the exhaustion of internal administrative remedies[.]" *Id.*

While Westbrook did engage in the grievance process, the record demonstrates he did not properly exhaust his administrative remedies. Prior to commencing his suit on August 10, 2023, Westbrook submitted nine (9) grievances. However, Westbrook failed to appeal six (6) of these grievances to the ARA: Grievance 2023-1001-0065-G; Grievance 2023-1001-00189-G; Grievance 2023-1001-00213-G; Grievance 2023-1001-00236-G; Grievance 2023-1001-00237-G; and Grievance 2023-1001-00328-G. *See* Dkt. No. 38-8 at 1-48*; see also* Dkt. No. 38-9 at 3.

Westbrook did appeal three (3) of the nine (9) grievances to the ARA. On July 17, 2023, Westbrook submitted Grievance 2023-1001-00263-G. Dkt. No. 38-8 at 57-60. The grievance was decided by the Warden and Health Services Administrator, and Westbrook was denied relief. *Id.* at 56. Westbrook appealed the decision to the ARA on August, 3, 2023, which was stamped received by the ARA on August 14, 2023. *Id.* at 49, 53-55. On September 11, 2023, after

Westbrook filed the instant action, the ARA determined Westbrook's underlying grievance was improperly submitted, notified Westbook of that determination, and directed the facility to amend its response to the grievance to reflect it was improperly submitted. *Id.* at 49-52*; see also* Dkt. No. 38-9. Westbrook's Grievance 2023-1001-0264-G experienced a similar fate: he appealed the facility's decision to the ARA and the ARA determined the underlying grievance was improperly submitted and directed the facility to amend its response. *See* Dkt. No. 38-8 at 62-74; *see also* Dkt. No. 38 at 17-18.

On July 27, 2023, Westbrook submitted Grievance 2023-1001-00289-G. Dkt. No. 38-8 at 83-90. The Warden determined this grievance was improperly submitted and provided Westbrook an opportunity to re-submit the grievance. *Id.* at 87-88. Westbrook resubmitted the grievance which was once again determined to be improperly submitted. *Id.* at 81-86. Westbrook did appeal this decision to the ARA, but the appeal was returned unanswered, on September 20, 2023, because the ARA determined the underlying grievance was improperly submitted. *Id.* at 75-80. In all, Westbrook never received a final ruling from the ARA from any of his three (3) appeals. *See* Dkt. No. 38-9 at 2-3.

**II. Westbrook's Claims**

As noted, Westbrook commenced this action on August 10, 2023, pursuant to 42 U.S.C. § 1983, alleging the Defendants violated his constitutional rights by way of "cruel and unusual punishment, discrimination, deliberate indifference, neglect, mistreatment, put into harms way, [and] retaliation." Dkt. No. 1 at 5-6. Westbrook advances four (4) claims: (1) Defendant Lysinger did not provide him adequate medical care, provided him his medication late and his lupus flared up; (2) the medicine prescribed to him for his lupus suppressed his immune system and caused diarrhea resulting in him being prescribed additional stomach pills; (3) an unknown "she" denied

Westbrook his medicine on time in retaliation for Westbrook being bi-sexual; and (4) he was placed in a pod "full of crips during the time of a gang war" but he is no longer in a gang and unnamed officials knew this but put him in the pod anyway "to get me killed." *Id.* Westbrook names Jamie Lysinger, Serena Brewer, Joe Norwood, Shelia Devine and Kevin Brown as defendants. *Id.* at 3-4; *see also* Dkt. No. 38 at 7-8, 26.

Now, the Defendants move for summary judgment on all of Westbrook's claims. Dkt. No. 38. The Defendants argue, in part, Westbrook failed to exhaust his claims. *Id.* Westbrook did not respond to the Motion. The Motion is ripe for review.

**III. Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must "'view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party.'" *Cronick v. Pryor*, 99 F.4th 1262, 1267 (10th Cir. 2024) (quoting *Simpson v. Little*, 16 F.4th 1353, 1360 (10th Cir. 2021)).

When a defendant asserts an affirmative defense in a motion for summary judgment, the defendant "'must demonstrate that no disputed material fact exists regarding the affirmative defense asserted' when the evidence is viewed in the light most favorable to the plaintiff." *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 746 (10th Cir. 2014) (quoting *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011)). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Hutchinson v. Pfeil*,

105 F.3d 562, 564 (10th Cir. 1997). If the plaintiff fails to make this showing, "the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id.*

Even when a dispositive motion is unopposed, the Court remains obligated to determine if the summary judgment motion is properly "supported" pursuant to Federal Rule of Civil Procedure 56(c). *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002) ("[A] party's failure to file a response to a motion for summary judgment is not, by itself, a sufficient basis on which to enter judgment against the party."). Even when a party has failed to respond, the district court must make the "additional determination that judgment for the moving party is 'appropriate' under Rule 56." *Id*. at 1195. "Summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id*. In analyzing whether a material issue of fact exists, it must be remembered that, by failing to file a timely response, a plaintiff "waives the right to respond or controvert the facts asserted in the summary judgment motion," and the "court should accept as true all material facts asserted and properly supported in the summary judgment motion." *Id.*

**IV. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") states in relevant part: "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA exhaustion requirement requires proper exhaustion," including "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006). The inmate must use "all steps that the agency holds out, and [do] so *properly*." *Id.* at 90 (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Under the PLRA,

"[a]n inmate who begins the grievance process but does not complete it is barred from pursuing [his] § 1983 claim" in federal court. *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

"Once a defendant proves that a plaintiff failed to exhaust [his administrative remedies], ... the onus falls on the plaintiff to show that remedies were unavailable to him." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). "Administrative remedies are deemed unavailable if, among other things, 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016)); *see also Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (stating that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust").

Westbrook was incarcerated at Davis Correctional Facility at the time of the events underlying his Complaint. *See* Dkt. No. 1. Accordingly, the PLRA applies to Westbrook's claims. *See Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1184 (10th Cir. 2004) (The PLRA exhaustion requirement "applies fully when the plaintiff is a federal or state inmate held in a privately operated facility."), abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007).

As noted, ODOC Policy OP-090124 provides the applicable administrative grievance procedure. Dkt. No. 38-7. The process first required an inmate to properly complete the grievance procedure at the facility. *Id.* at 13-15. If unsatisfied with the facility's resolution, an inmate could then appeal to the ARA. *Id.* at 15-18. Only after the ARA provides a final ruling, is an inmate considered to have "satisfied the exhaustion of internal administrative remedies[.]" *Id.* at 18.

Defendants establish, while Westbrook did engage in the grievance procedure at the facility and did file three (3) appeals to the ARA, Westbrook did not properly complete all steps required by ODOC. *Woodford*, 548 U.S. at 90. Prior to filing his suit, Westbrook had not appealed any grievance to the ARA. *See* Dkt. No. 38-8 at 1-47; Dkt. No. 38-9 at 3. Of his three (3) appeals to the ARA, the appeals were ongoing when he commenced this suit. *See* Dkt. No. 38-8 at 49-55; 62-67; 75-80; Dkt. No. 38-9 at 2-3. Further, in each of these three (3) appeals, he did not receive a final ruling. *See id.* Therefore, Defendants established Westbrook did not properly exhaust his administrative remedies. *Thomas*, 609 F.3d at 1118.

Further, by failing to respond, Westbrook has not demonstrated "that remedies were unavailable to him[.]" *Hamdo v. Rivera*, Case No. 23-CV-577-JD, 2024 WL 3300001, at *3 (W.D. Okla. Apr. 5, 2024), *report and recommendation adopted as modified* 2024 WL 2955723 (W.D. Okla. June 12, 2024); *see also Tuckel*, 660 F.3d at 1254 ("Once a defendant proves that a plaintiff failed to exhaust, . . . the onus falls on the plaintiff to show that remedies were unavailable to him[.]"). Accordingly, Defendants' affirmative defense is established as a matter of law as to Westbrook's claims. *See Hines v. Sherron*, 372 F. App'x 853 (10th Cir. 2010) (finding § 1983 appellant "failed to present evidence that raised a genuine issue of material fact regarding his exhaustion of administrative remedies" and affirming district court's decision to grant summary judgment and dismiss the complaint for failure to exhaust administrative remedies).

Because no reasonable juror could find in Westbrook's favor on the issue of PLRA exhaustion, the Court concludes that the Defendants are entitled to judgment as a matter of law on that issue. The Court therefore grants Defendants' Motion on the affirmative defense that 42 U.S.C. § 1997e(a)'s exhaustion requirement bars relief as to Westbrook's claims.

**V. Conclusion**

IT IS THEREFORE ORDERED that Defendants Joe Norwood, Kevin Brown, Jamie Lysinger, Serena Brewer and Shelia Devine's Motion for Summary Judgment [Dkt. No. 38] is granted and Westbrook's claims are dismissed without prejudice for failure to exhaust available administrative remedies.

IT IS FURTHER ORDERED that this is a final order terminating this action.

IT IS FURTHER ORDERED that a separate judgment shall be entered herewith.

Dated this 26th day of August, 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE